Attallah Brightwell, Pro se
5 Park Road
Paterson, New Jersey 07514
551-404-8616

Attallah.brightwell@yahoo.com

Melissa E. Rhoads, Esq., Clerk of Court
The United States District Court
for the District of New Jersey
50 Walnut Street
Newark, New Jersey 07102

July 9, 2023

    **Re:  Brightwell v. Department of Children and Families et. al.**
        **Docket #2:22-cv-03016-SDW-ESK**

Dear Ms. Rhoads:

    Enclosed please find an Affidavit for Default Judgement and Motion Request, in addition to proof of service for Defendant Julissa Stubnicki.  Ms. Stubnicki was served with the original complaint on July 13, 2022 by Guarantee Subpoena; the first amended complaint on November 19, 2022 via regular and overnight USPS; and the second amended complaint on March 13, 2023 via regular mail and overnight USPS.  The Defendant has continually failed to respond in accordance with Fed. R. Civ. P. 12 (a) (1).

Thank you,

Attallah Brightwell, Pro se

**AFFIDAVIT IN SUPPORT OF ENTRY OF DEFAULT**

STATE OF:   NEW JERSEY:

COUNTY OF:  PASSAIC:

I, Attallah Brightwell, Pro se provide a sworn statement, stated on oath the following:

1. I am a Pro se Plaintiff and have personal knowledge of the facts set forth in
   this Affidavit.

2. A copy of the Summons, together with a copy of the original Complaint, was served
   upon Defendant Julissa Stubnicki, 2 Shady Lane, Lodi, New Jersey 07644  by Guaranteed
   Subpoena Services, Inc. on July 13, 2022, Pursuant to Fed. R. Civ. P. 4 (c) Rules of Civil
   Procedure, service process was deemed complete on July 13, 2002 and signed by
   Defendant Stubnicki.

3. The Defendant failed to answer or otherwise defend as to the Plaintiff's Complaint, or
   serve a copy of any Answer or other defense.

4. On November 17, 2022 an Affidavit in Support of Entry of Default was filed.

5. Around December, Deputy Attorney General Boylan contested the entry of default
   stating that Plaintiff did not prove that the Amended Complaint was served to
   Defendant Stubnicki.

6. On May 9, 2023 Plaintiff mailed a coy of the Second Amended Complaint and the
   Supplemental Pleading via United States Postal Service, registered mail, and regular mail
   to:  2 Shady Lane, Lodi, New Jersey.

7. The Defendant failed to answer or otherwise defend as to the Plaintiff's Complaint, or serve a copy of any Answer or other defense.

8. This Affidavit is executed by affiant herein in accordance with **Fed. R. Civ. P. 12 (a) (1) which states "Answers in federal court are generally due in 21 days after the operative complaint…"** Rules of Civil Procedure, for the purpose of enabling the Plaintiff to obtain an entry of default against the Defendant for the failure to answer or otherwise defend as to the Plaintiff's Complaint.

SWORN TO AND SUBSCRIBED BEFORE ME, this the __10__ day of __July__ 2023

_____
NOTARY PUBLIC

MATHEWS PATHICKAL
Commision #2416512
Notary Public, State of New Jersey
My Commision Expires
January 24, 2027

**AFFIDAVIT IN SUPPORT OF ENTRY OF DEFAULT**

# 2:22 - cv - 03016 - SWb-Esk

STATE OF:   NEW JERSEY:

COUNTY OF:  PASSAIC:

I, Attallah Brightwell, Pro se provide a sworn statement, stated on oath the following:

1. I am a Pro se Plaintiff and have personal knowledge of the facts set forth in
   this Affidavit.

2. A copy of the Summons, together with a copy of the original Complaint, was served
   upon Defendant Julissa Stubnicki, 2 Shady Lane, Lodi, New Jersey 07644  by Guaranteed
   Subpoena Services, Inc. on July 13, 2022, Pursuant to Fed. R. Civ. P. 4 (c) Rules of Civil
   Procedure, service process was deemed complete on July 13, 2002 and signed by
   Defendant Stubnicki.

3. The Defendant failed to answer or otherwise defend as to the Plaintiff's Complaint, or
   serve a copy of any Answer or other defense.

4. On November 17, 2022 an Affidavit in Support of Entry of Default was filed.

5. Around December, Deputy Attorney General Boylan contested the entry of default
   stating that Plaintiff did not prove that the Amended Complaint was served to
   Defendant Stubnicki.

6. On May 9, 2023 Plaintiff mailed a coy of the Second Amended Complaint and the
   Supplemental Pleading via United States Postal Service, registered mail, and regular mail
   to:  2 Shady Lane, Lodi, New Jersey.

7. The Defendant failed to answer or otherwise defend as to the Plaintiff's Complaint, or serve a copy of any Answer or other defense.

8. This Affidavit is executed by affiant herein in accordance with **Fed. R. Civ. P. 12 (a) (1) which states "Answers in federal court are generally due in 21 days after the operative complaint…"** Rules of Civil Procedure, for the purpose of enabling the Plaintiff to obtain an entry of default against the Defendant for the failure to answer or otherwise defend as to the Plaintiff's Complaint.

SWORN TO AND SUBSCRIBED BEFORE ME, this the _____6th_____ day of ___June___ 2023

_____
NOTARY PUBLIC

MATHEWS PATRISKAL
Commission #2416512
Notary Public, State of New Jersey
My Commission Expires
January 24, 2027

**AFFIDAVIT IN SUPPORT OF ENTRY OF DEFAULT**

BRIGHTWELL V. NJ DCF ET.AL. # 2:22-CV-03016-SDW

STATE OF:   NEW JERSEY:

COUNTY OF:   PASSAIC:

I, Attallah Brightwell, Pro se provide a sworn statement, stated on oath the following:

1. I am a Pro se Plaintiff and have personal knowledge of the facts set forth in this Affidavit.

2. A copy of the Summons, together with a copy of the Complaint, was served upon Defendant Julissa Stubnicki by Guaranteed Subpoena Services, Inc. on July 13, 2022, Pursuant to Fed. R. Civ. P. 4 ( c ) Rules of Civil Procedure, service process was deemed complete on July 13, 2002.

3. More than twenty days have elapsed since the date which said Defendant was served with Summons and a copy of the Complaint.

4. The Defendant has failed to answer or otherwise defend as to the Plaintiff's Complaint, or serve a copy of any Answer or other defense.

5. This Affidavit is executed by affiant herein in accordance with **Fed. R. Civ. P. 12 ( a ) (1)** **which states "Answers in federal court are generally due in 21 days after the operative**

complaint..." Rules of Civil Procedure, for the purpose of enabling the Plaintiff to obtain

an entry of default against the Defendant for the failure to answer or otherwise defend

as to the Plaintiff's Complaint.

SWORN TO AND SUBSCRIBED BEFORE ME, this the _____ day of _____ 2022

MATHEWS PATHICKAL
Commision #2416512
Notary Public, State of New Jersey
My Coramision Expires
January 24, 2027

NOTARY PUBLIC

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

ATTALLAH BRIGHTWELL,                    **Docket#2:22-cv-03016-SDW-ESK**

      Plaintiff,

v.

NEW JERSEY DEPARTMENT OF                 MOTION FOR DEFAULT
CHILDREN AND FAMILIES AND                    JUDGEMENT
OFFICE OF LICENSING; HELEN                    AGAINST
EMOND; JENNIFER THIEL; JULISSA          JULISSA STUBNICKI
STUBNICKI; SHARONDA CLARK;
ANTOINETTE FRANKLIN; MARIA
ALTERMIRANO; THERESEA ROSSENER;
ANTOINETTE MAHAN; KATHRYN
O'CONNELL; JANET HOCHMAN; BRIAN
ROSS; DIANE COMISO; MARILYN WEISS;
BETH FERLICCHI; JOHN DOE (1-12) AND
XYZ (1-12), **all of whose true names are**
**Unknown, INCLUSIVE**

        Defendant,

   The above-captioned Plaintiff requested that the court enter default judgement against Defendant Julissa Stubnicki.

  In support of this Motion, the Plaintiff states:

1. The Clerk previously entered default against the defendant for failure to plead or otherwise defend the Plaintiff's claims on

2. The Defendants have not taken any action since the entry of default by the Clerk.

3. The Defendants are not minors or incompetent persons. The Defendants are not United States Veterans.

4. I have served this Motion for Default Judgement on the Defendant.

Therefore, judgement by default is **ENTERED** against the Defendant in favor of the Plaintiff as follows:

5.    As detailed in the Plaintiff's Declaration submitted in the Plaintiff's request for default, the Defendant is not protected by the Servicemembers Civil Relief Act, 50 U.S.C. § 501et seq.

6.    Wherefore, the Plaintiff requests:

That the Court conduct a hearing on this motion to:

- conduct an accounting
- determine the amount of damages
- establish the truth of any allegation by evidence;
- investigate matters concerning
- enter default judgement consistent with the proposed order attached to this Motion.

5 Park Road
Paterson, New Jersey 07514
551-404-8616

CERTIFICATION OF SERVICE

I, Attallah Brightwell, certify that a copy of my motion was served by Overnight mail by the

United States Postal Service and regular mail on Wednesday, May 10, 2023 upon Defendant

Julissa Stubnicki at the address below:

2 Shady Lane, Lodi, New Jersey 07644

# USPS Tracking®

FAQs ›

Remove ✕

Tracking Number:

## EI248730313US

Copy        Add to Informed Delivery (https://informeddelivery.usps.com/)

**Scheduled Delivery by**

## WEDNESDAY

# 10 May 2023 ⓘ    by 6:00pm ⓘ

Feedback

Your item was delivered in or at the mailbox at 4:42 pm on May 10, 2023 in LODI, NJ 07644. Waiver of signature was exercised at time of delivery.

Get More Out of USPS Tracking:

   USPS Tracking Plus®

**Delivered**
**Delivered, In/At Mailbox**

LODI, NJ 07644
May 10, 2023, 4:42 pm

**See All Tracking History**

Text & Email Updates ⌄

Proof of Delivery ⌄

USPS Tracking Plus® ⌄

$\textit{SJ - 404 - 8148}$

**YOU CAN NOW RETRIEVE A COPY OF THIS INVOICE ONLINE AT WWW.SERVED.COM-- CLICK ON MY ACCOUNT!**

**Guaranteed Subpoena Service, Inc.**
P.O. Box 2248 - Union, New Jersey 07083
(908) 687-0056   (800) 672-1952
Fax: (908) 688-0885 Tax ID 22-2393485
www.Served.com



**YOU CAN NOW PRINT A RECEIPT ONLINE AS A PAYMENT CONFIRMATION FOR YOUR RECORD. SAVE A STAMP, TIME AND EFFORT AND PAY THIS INVOICE ONLINE! YOU MAY USE VISA, MASTERCARD, AMERICAN EXPRESS, DISCOVER OR EVEN A PAYPAL ACCOUNT!**



## INVOICE

ATTALLAH BRIGHTWELL, PRO SE
ATTALLAH BRIGHTWELL, PRO SE
5 PARK ROAD
PATERSON NJ 07514

| | |
|---|---|
| INVOICE #: | 20220706160957 |
| AMOUNT DUE: | $80.00 |
| DUE DATE: | 8/13/2022 |

WE RESERVE THE RIGHT TO CHARGE 18% APR INTEREST (0.049315% DPR PAST THE DUE DATE) ON ALL UNPAID BALANCES.

---

Tear along the perforation and keep the middle stub for your records! Return the bottom stub with your payment. Thank you for your business!

AMOUNT DUE: **$80.00**   INVOICE#: 20220706160957   INVOICE DATE: **7/14/2022**
ATTORNEY:          ATTALLAH BRIGHTWELL, PRO SE
FIRM:              ATTALLAH BRIGHTWELL, PRO SE
PLAINTIFF:         ATTALLAH BRIGHTWELL
DEFENDANT:         NEW JERSEY DEPARTMENT OF CHILDREN AND FAMILIES AND OFFICE OF LICENSING
DOCKET#:           2 22 CV 03016 SDW ESK                    CLAIM#:
ENTITY SERVED:     JULISSA STUBNICKI
SERVED WITH:       SUMMONS AND COMPLAINT, PRAYING FOR RELIEF
SERVED DATE:       **7/13/2022**                 COURT DATE:

| | | |
|---|---|---|
| ATTENDANCE FEE: | $0.00 | PAYMENT SENT ON: |__|__| / |__|__| / |__|__| |
| SERVICE FEE: | $75.00 | |
| MILEAGE FEE: | $0.00 | AMOUNT PAID: |__|__| , |__|__|__| . |__|__| |
| PRIORITY FEE: | $0.00 | |
| PICKUP FEE: | $0.00 | [ ] CHECK |
| INCORRECT ADDRESS FEE: | $0.00 | [ ] VISA |
| DOCUSIGN FEE: | $5.00 | [ ] MASTERCARD |
| CASH ATTACHED: | $0.00 | [ ] DISCOVER |
| WAIT TIME 0.00 | $0.00 | [ ] AMERICAN EXPRESS |
| VIDEO/MISC. FEE: | $0.00 | |
| TOTAL: | **$80.00** | CARD/CHECK#: |__|__|__|__|__|__|__|__|__|__|__|__|__|__|__|__| |

---

Tear along the perforation and keep the middle stub for your records! Return the bottom stub with your payment. Thank you for your business!

**EFFECTIVE JULY 1, 2020 THE FIXED COST OF SERVING PROCESS IN NJ WILL BE $75.00 ONLY IF SERVED. INTERJURISDICTIONAL $150 ONLY IF SERVED.**

ATTALLAH BRIGHTWELL, PRO SE
5 PARK ROAD
PATERSON NJ 07514

| | |
|---|---|
| INVOICE #: | 20220706160957 |
| AMOUNT DUE: | $80.00 |
| DUE DATE: | 8/13/2022 |

For the fastest resolution to your billing inquiry, email us at:
**Billing@Served.com**

GUARANTEED SUBPOENA SERVICE, INC.
**WWW.SERVED.COM**
P.O. BOX 2248
UNION, NJ 07083

[ ] CHECK

[ ] Visa   [ ] MasterCard   [ ] Discover   [ ] American Express

CARD #: |__|__|__|__|__|__|__|__|__|__|__|__|__|__|__|__|

EXPIRATION: |__|__| / |__|__|

SIGNATURE: _____

20220706160957

**\*\*\* To Pay Online Go To "My Account" \*\*\***

DocuSign Envelope ID: 534FEEC5-3FC1-43BB-9BE8-B60B69774C2E
Case 2:22-cv-03016-EP-ESK   Document 90   Filed 07/10/23   Page 13 of 45 PageID: 930

20220706160957

| AO 440 (Rev. 06/12) Summons in a Civil Action | **RETURN OF SERVICE** |

SERVICE OF:    **SUMMONS AND COMPLAINT, PRAYING FOR RELIEF**
EFFECTED (1) BY ME:    **DAVID SPALDING**
TITLE:    **PROCESS SERVER**

DATE: **7/13/2022 8:21:06 AM**

CHECK ONE BOX BELOW TO INDICATE APPROPRIATE METHOD OF SERVICE:

[X] Served personally upon the defendant

JULISSA STUBNICKI

Place where served:

2 SHADY LANE   LODI  NJ  07644

[ ] Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein. Name of person with whom the summons and complaint were left:

JULISSA STUBNICKI

Relationship to defendant    **SELF**

Description of Person Accepting Service:

SEX:F___ AGE:36-50  HEIGHT: 5'4"-5'8"____ WEIGHT: 161-200 LBS.____ SKIN:BROWN____ HAIR:BROWN___ OTHER:_____

[X] To the best of my knowledge, said person was not engaged in the U.S. Military at the time of service

**STATEMENT OF SERVER**

TRAVEL$ _____.____      SERVICES $_____.____      TOTAL $_____.____

**DECLARATION OF SERVER**

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in this Return of Service and Statement of Server is true and correct.

Docusign Court Approved E-Signature
*DAVID SPALDING*

DATE: __07/13/2022__      ____5B985E25894E4D5_____ L.S.

SIGNATURE OF DAVID SPALDING
GUARANTEED SUBPOENA SERVICE, INC.
2009 MORRIS AVENUE
UNION, NJ 07083

ATTORNEY:    ATTALLAH BRIGHTWELL, PRO SE
PLAINTIFF:    ATTALLAH BRIGHTWELL
DEFENDANT:    NEW JERSEY DEPARTMENT OF CHILDREN AND FAMILIES AND OFFICE OF
VENUE:    LICENSING
DOCKET:    DISTRICT
COMMENT:    2 22 CV 03016 SDW ESK

Attallah Brightwell
5 Park Road
Paterson, New Jersey 07514

Julissa Stubnicki
2 Shady Lane
Lodi, New Jersey 07644

May 9, 2023

      **Re:  Brightwell v. Department of Children and Families et.al**
          **Docket # 2:22-cv-03016-SWD-ESK**

Dear Ms. Stubnicki:

    Enclosed please find a copy of the Second Amended Complaint filed on March 2, 2023 and the supplemental pleading filed on March 13, 2023 as relevant to the above captioned matter. Please be advised, if you do not respond within the 21 day period in accordance with **Fed. R. Civ. P. 12 (a) (1) which states "Answers in federal court are generally due 21 days after the operative complaint……"** I will enter a motion for default judgement, as you have failed to respond to the Original Complaint on July 13, 2022 and the First Amended Complaint on November 19, 2022.

Thank you for your cooperation in this matter.

Attallah Brightwell, Pro se

Cc:  Judge Edward Kiel
     Elizabeth Boylan, Deputy Attorney General

ATTALLAH  BRIGHTWELL, Pro se

5 Park Road

Paterson, NJ 07514

**Attallah.brightwell@yahoo.com**

**551-4048616**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ATTALLAH BRIGHTWELL, Pro se

   Plaintiff,

V.

NEW JERSEY DEPARMTMENT OF
CHILDREN AND FAMILIES AND
OFFICE OF LICENSING; HELEN
EMOND; JENNIFER THIEL; JULISSA
STUBNICKI; SHARONDA CLARK;
ANTOINETTE FRANKLIN; MARIA
ALTERMIRANO; THERESEA ROSSENER;
ANTOINEETE MAHAN; KATHRYN
O'CONNELL; JANET HOCHMAN; BRIAN
ROSS; DIANE COMISO; MARILYN WEISS;
BETH FERLICCHI; JOHN DOE (1-12) AND
XYZ (1-12), all of whose true names are
Unknown, INCLUSIVE

   Defendant,

Docket # 2-22-cv-03016-SDW-ESK

NOTICE OF MOTION OPPOSITION
IN OPPOSITION OF DEFENDANTS'
MOTION TO DISMISS PURSUANT
TO FEDERAL RULE 12(B) 6.

ATTALLAH BRIGHTWELL, Pro se
5 Park Road
Paterson, NJ 07514
Attallah.brightwell@yahoo.com

551-404-8616

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATTALLAH  BRIGHTWELL, | DOCKET # 2:22-CV-03016-sdw |
| Plaintiff, | Hon.  Evelyn Padin, U.S.D.J.<br>Hon.  Edward S. Kiel, U.S.M.J |
| V. | |
| NEW JERSEY DEPARTMENT OF CHILDREN AND FAMILIES AND OFFICE OF LICENSING; HELEN EMOND; JENNIFER THIEL; JULISSA STUBNICKI; SHARONDA CLARK; ANTOINETTE FRANKLIN; MARIA ALTERMIRANO; THERESEA ROSSENER; ANTOINETTE MAHAN; KATHRYN O'CONNELL; JANET HOCHMAN; BRIAN ROSS; DIANE CAMISO; MARILYN WEISS; BETH FERLICCHI; JOHN DOE (1-12) AND XYZ (1-12), all of whose true names are Unknown, INCLUSIVE | Motion Date:  June 5, 2023<br><br>**Order** |
| Defendants, | |

This matter having been opened to the Court on application of Attallah Brightwell, Pro se, Plaintiff for an order to deny The Motion to Dismiss filed by the above Defendants pursuant to Federal Rule 12 (b) (6)

IT IS on this _____day of _____, 2023 ORDERED that the State Defendants '

Motion to Dismiss the Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure

12 (b) (6) is herby **DENIED;** and it is further ORDERED that the Plaintiff's

Motion In Opposition is **GRANTED.**

**ORDERED** that a copy of this Order shall be served upon Elizabeth Boylan, Deputy Attorney

General, on behalf of the Defendants within ten (10) days of receipt hereof. .

_____
HON. EVELYN PADIN, U.S.D.J.

ATTALLAH BRIGHTWELL, Pro se
5 Park Road
Paterson, NJ 07514
Attallah.brightwell@yahoo.com

551-404-8616

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ATTALLAH BRIGHTWELL,                    Docket # 2:22-CV-03016-SDW-ESK

    Plaintiff,

v.

NEW JERSEY DEPARTMENT OF                    CERTIFICATION OF
CHILDREN AND FAMILIES AND                    ATTALLAH BRIGHTWELL
OFFICE OF LICENSING; HELEN
EMOND; JENNIFER THIEL; JULISSA
STUBNICKI; SHARONDA CLARK;
ANTOINETTE FRANKLIN; MARIA
ALTERMIRANO; THERESEA ROSSENER
ANTOINETTE MAHAN; KATHRYN
O'CONNELL; JANET HOCHMAN; BRIAN
ROSS; DIANE CAMISO; MARILYN WEISS;
BETH FERLICCCHI ; JOHN DOE (1-12) AND
XYZ (1-12), all of whose true names are
Unknown, INCLUSIVE as follows

I, Attallah Brightwell, Pro se Plaintiff of 5 Park Road, Paterson, NJ, am of full age and herby
certifies as follows:

1. I am the Pro se Plaintiff in the above captioned matter.  I am familiar with the facts herein.

2. An injury claim was filed on November 5, 2015 as a result of extensive, aggressive, and continuous investigative-like and unwarranted inspections of Plaintiff's child care center by inspectors from the Office of Licensing "OOL".

3. The claims continued after 2013 when the Complaint was filed to date.  Not from 2013 until 2015 as suggested by Defendants.

4. The claims were filed not in response to "normal" inspection practices by the Defendants but rather investigative-like, lengthy, unwarranted, and harassing inspections by the Defendants.

5. Summary Judgement was granted to Defendants not due to immunity as cited in the Defendant's statement of facts, but rather due to the Court's decision relevant to the injury.  Court's decision was granted on March 22, 2018, one day before the scheduled hearing date of March 23, 2018.  Plaintiff's court order reflects the original order, unlike the order submitted by the Defendants' attorney which reflect an amended document to reflect a March 23rd hearing and decision.

6. An appeal was filed and the Appellate Court upheld the decision of the lower Court in 2020 not 2022 as cited in the Defendant's statement of facts.

7. Plaintiff's child care center was closed from March 2020 until July 2020 due to the coronavirus pandemic

8. Around July 2020 after Defendants O'Connell and Rossener violated Executive Orders 192 and 149 declared by Governor Murphy in response to a Public Health Emergency and State of Emergency due to dangers posed by Coronavirus disease.

9. Defendant Brian Ross denied that Plaintiff was provided an email regarding required health practices in the midst of the coronavirus pandemic.

10. Plaintiff learned that several White center owners experienced a Child Care Safety Assessment in response to the coronavirus pandemic. The center owners reported to Plaintiff that the inspectors arrived to their centers wearing a mask; without being asked, the inspectors checked their temperature with their own thermometer, shared the results with the teacher present to ensure that their temperature was in normal range; immediately asked directions to the nearest sink to wash her hands; maintained 6 feet from all staff and children; asked questions as relevant to the centers COVID practices; and departed within fifteen minutes. Each center owner reported the same. The above inspections were conducted in conformance with Executive Orders 192 and 149.

11. Around July 2020, Plaintiff attempted to resolve the situation by filing a complaint with DCF, OOL, and EOE

12. Around 2021 claim was denied by EOE. DCF and OOL has not responded to the Plaintiff's request for an administrative hearing to date

13. Plaintiff did not discover long-term racial discrimination until May 2021

14. The file of the Plaintiff was in possession of each and every inspector that conducted inspections of the Plaintiff's center from 2013 to date.  Only the inspectors who became participants in the racially discriminatory conduct have been named as Defendants.

15. Around August 2020 Plaintiff filed with State Treasury.

16. Around March 2021 Plaintiff received denial letter from State Treasury.

17. Around May 22, 2021 Plaintiff discovered that harassment towards her at the hands of the Defendants since 2013 had been long-term racial discrimination

18. Around March 2022 Plaintiff learned that Defendant Clark permitted the licensing of a White owned child care center that was assigned an occupancy certificate of "continued use" even though there has never been a child care center in the building.

19. On May 23, 2022 Plaintiff filed a claim in District Court

20. On Aug 8, 2022 Plaintiff filed an amended complaint to add two Defendants inadvertently excluded, not to add claims as suggested by the Defendants.

21. Defendant Camiso and OOL has not  ever responded to Plaintiff's request for an administrative hearing as cited by the Defendants.

22. Plaintiff exhausted all administrative measures, which were ignored by "State Defendants" to resolve this issue prior to filing a complaint in District Court.

23. State Defendant Clark, Altermirano, and Franklin have participated in conduct that is unlawful which has been condoned by State Defendant Administrators.

24. From 2013 to date Plaintiff has never been the subject of an investigation by the local fire or health department.

25. From June 1991 until February 2012, Plaintiff had an effective, productive, and pleasant working relationship with State Defendants and has always been compliant and respectable of inspection process.

26. State Defendants employ 45 -50 Office of Licensing Inspectors to inspect over 5,000 child care centers in the State of New Jersey, confirming that all centers are not inspected equally.

27. Exhibits:

List of exhibits excluded in this certification. Cited with description throughout document.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____

Attallah Brightwell, Pro se

Dated:

Attallah Brightwell
5 Park Road
Paterson, NJ 07514

551-404-8616

The Honorable Edward Kiel
The United States District Court
for the District of New Jersey
50 Walnut Street
Newark, New Jersey 07102

May 22, 2023

     **Re:  Brightwell v.  Department of Children and Families et. al.**
        **Docket # 2:22-cv-03016-SDW-ESK**

Dear Judge Kiel:

   Please accept this letter brief in support of my Notice of Motion in Opposition to the

Defendant's Notice of Motion to dismiss the Plaintiff's Complaint pursuant to Rule 12 (b) 6.

This letter brief is in lieu of a more formal brief.

   The Defendants' Notice of Motion to Dismiss the Plaintiff's Complaint should be denied as to

the following Defendants:   New Jersey Department of Children and Families and Office of

Licensing, Jennifer Thiel, Sharonda Clark, Antoinette franklin, Maria Altamirano, Theresea

Rossener, Kathryn O'Connell, Brian Ross, Diane Camiso, Helen Emond, and Beth Ferlicchi

(hereinafter, "the State Defendants") with prejudice for the below reasons:

   The applicable Federal Rule of Procedures involved here is Federal Rule 12(b)(6), provides for

"a dismissal of a complaint in whole or part, if the plaintiff fails to state a claim upon which relief

can be granted."  Moving party bears the burden of showing that no claim has been stated.  In

deciding a motion to dismiss under Rule 12 (b) (6), a court must take all allegations in the

complaint as true and view them in the light most favorable to the plaintiff. Moreover, where

the plaintiff is proceeding as pro se, the complaint is to be "liberally construed" and must be

held to less stringent standards than formal pleadings drafted by lawyers. Erickson v. Pardus,

551 U.S. 89 , 127 S. ct. 2197, 167 L. Ed. 2d 1081, 2007 U.S. Petitioner. The Court's inquiry

is guided by the standard of Bell Atlantic Corp.   v.   Twombly, and Ashcroft   v.  Iqbal.  To

determine the sufficiency of a complaint under Ashcroft v.   Iqbal, the U.S. Court of Appeal for

the 3rd Circuit has identified the following steps a District Court must take when determining the

sufficiency of a complaint under Rule 12 (b) (6); assumption of the truth; Identify any conclusory

allegations contained in the complaint not entitled to the assumption of truth; and determine

whether any well pleaded factual allegations contained in the complaint plausibility give rise to

an entitlement for relief.

   The Defendants continue to raise affirmative defenses in this Motion to Dismiss, a practice

which is appropriate when filing an answer; "[t]he purpose of requiring the Defendant to plead

available affirmative defenses in his answer is to avoid surprise and undue prejudice by

providing the Plaintiff with notice and the opportunity to demonstrate why affirmative defenses

should not succeed. " Robinson v. Johnson, 313 F3d. 128, 134-35 (3d Cir. 2002). Defenses

that are nothing more than bare bones are conclusory allegations and should be stricken. FDIC

v. Modular Homes Inc., 859 F. Supp. 117,  120-121 (N.J. 1994).  In Pa v. State Univ. v.

Keystone alternatives, LLC 2020 U.S.P.Q. 2D (BNA) 10119 2020 WL 1082647, Defendant's

Motion to Dismiss was denied as the Court believed that the affirmative defenses cited were

premature for a  motion to dismiss.  The defendants also requested that the court review

documents as exhibits for the motion to dismiss.  The court rejected the request to submit

documents because it believed that defendants were attempting to use the motion to dismiss

for summary judgement.

      First. There is no attempt by this Plaintiff to relitigate her prior New Jersey Superior

Court case.  The claims in the prior case focused on an injury claim while the current Complaint

is a claim for Racial Discrimination.  The Defendants raise the issue of res judicata or it's

alternative name of claim preclusion. "Res judicata, or claim preclusion is a court-created rule

that is designated to draw a line between vexatious, repetitious, and needless claim on the

other hand." Purter v. Heckler ; 771  F. 2d  682,  689-90  (3d cir. 1985)  "Res judicata will not be

defeated by minor differences of form, parties or allegations where the controlling issue have

been resolved in a prior proceeding in which present parties have the opportunity to appear

and assert their rights." Zhang   v.  Southeastern Financial Group , Inc. 9E. D. 80  F. Supp.  787,

794 (E. D.  Pa 1997).   Plaintiff articulates in her Complaint that she discovered the long-term

discrimination on May 20, 2021, after a new inspector showed great frustration that the

Plaintiff's file had not been managed properly and that there was no occupancy assigned to the

classrooms --- the driving force of a child care center; and a promise made good by Defendant

Thiel who threatened to reduce Plaintiff's enrollment without good cause.  Defendants Thiel,

Clark, and Emond should not be dismissed from this Complaint as suggested by The Defendants'

attorney.  Res judicata and collateral estoppel is not applicable to these Defendants, or the

other Defendants as their racially discriminatory conduct towards the Plaintiff began the series

of long-term, discriminatory events.

New Jersey Supreme Court allows the discovery rule which permits plaintiff to add claims when they are discovered.  In <u>Titus v. Borough of Maywood</u>, 2016 U.S. Dist. , plaintiff filed a complaint against defendant, the Borough of Maywood, alleging that they violated the American with Disabilities Act, New Jersey Law Against Discrimination, New Jersey Civil Rights Act, both the U.S. Constitution and New Jersey Constitution related to his knee injuries suffered while working for the Defendants.  Two years after filing the Complaint, plaintiff filed a motion for leave to amend, because he discovered that he was being racially discriminated against. Court granted plaintiff's motion to add discrimination claims.  The Defendants are attempting to penalize the Plaintiff for being unaware of the racial discrimination claims at the time of the prior state court.

Res judicata and collateral estoppel cannot be applied to the Plaintiff's Complaint because the claims are new.  In <u>Duhaney v. A .G. of the United States</u>, 621 F. 3d 340, res judicata did not prevent the government from adding charges to the resident's notice to appear based on convictions that could not have been resolved during prior proceedings as a new cause of action was involved.  Different circumstances require a different discovery time when the injury was caused.  For example: in a personal injury claim, the Plaintiff becomes aware of the exact date when he is injured.   The discovery rule is the exception to the statute of limitation.  The statue of limitations start to run after the claim is discovered.   This is not considered "two bites at the apple" as set forth by the Defendants' attorney.  Both the injury claim and the long-term racial discrimination claim have different elements that need to be proven for each claim.  In <u>O'Leary v. Liberty Mut. Ins. Co</u>., 923 F. 2d 1062, District Court granted summary judgement to Appellee, the  employer of the appellant employee who was

injured.   Court ruled that the action was not barred by res judicata because the two causes of actions were not the same.    The attorney for the State Defendants' argue in her prior reply that racial discrimination occurred, but they were isolated acts. Three is a legal issue between the parties as to whether the racial discrimination was isolated or long-term.  This is an issue that should be reserved for a jury to determine, not an issue to be decided by the Defendants' attorney who has not conducted deposition or commenced through discovery.  "The purpose of a motion to dismiss is to test the sufficiency of a Complaint, not to resolve disputed facts or decide the merits of the case." Cimino  v.  Del.  Dept. of Labor  2002 U.S. Dist.

The State Defendants suggest that the Plaintiff's issues have been resolves, but they have not because the claim of long-term racial discrimination was not discoverable until May 2021 and has continued to date, as a supplemental pleading was filed to include the new claims. Plaintiff's additional facts give rise to cognizable cause of action as the additional facts are a continuation of long-term racial discrimination.  Furthermore, the Plaintiff's claim in State Court was decided on March 22, 2018, one day before the scheduled hearing date of March 23, 2018, not on March 23, 2018 as explained by the Defendants.  Plaintiff's exhibits are the original copies which support her allegation that the Court decided the Motion of Summary Judgement on the paper, even though it was scheduled for oral argument, one day before the scheduled hearing day. **(See Exhibit  A  & B )**   The Order presented by the Defendant's attorney has been altered to reflect the hearing as on the scheduled date.  The Defendants have not provided proof to support their claim or proof that the Plaintiff was aware of the long-term and continuous racial discrimination.    Res judicata did not bar claims that were predicated or events that post-date in the filing of the initial Complaint.  Morgan v.  Covington Twp. , 648  F.

3d  172.  In <u>Rouse v II-VI, Inc.</u> 2007 U.S. Dist. , Plaintiff, an African-American male, employed by Defendants II – VI, Inc. alleged that his employers discriminated and retaliated against him because of his age, race, and for complaining that he was being discriminated against.  This was the third legal action Plaintiff initiated against the Defendants.  Court ruled that collateral estoppel does not bar plaintiff because his claims were new.

 Prior claims raised have no bearing on the issue and or claim of long-term racial discrimination presented in the current Complaint.  If the Plaintiff was aware previously, then she would have been subjected to the entire controversy doctrine, which requires that Plaintiff present in one suit all claims arising out of a single controversy.  In <u>D'Angelo Associates  v. Soffian, 290  N.J.  Super. 293</u>. [T]he plaintiff filed an action in the New Jersey Superior Court after initiating a case arising from the "same sequence of events" in federal district court. Id.  At 2926-97.  The Law Division denied the defendants' motion to dismiss based on the entire controversy doctrine, and the New Jersey Appellate Division affirmed.  Id. At296-97, 301.  The Appellate Division explained "the entire controversy doctrine does not require a dismissal when multiple actions involving the same or related claim are pending simultaneously. "

 Secondly. Defendants are not automatically protected under Eleventh Amendment Sovereign Immunity.  In <u>Flaker v.  N.J.  Transit  Rail Operations</u>, Inc., United States District Court for the Eastern District of Pennsylvania; June7, 2018  court of appeals noted:  When it comes to immunity from federal suits under the Eleventh Amendment, New Jersey does not have an absolute right to claim immunity.  There as there are exceptions to the immunity defense in New Jersey:  (1) state treasury funding  (2) status under the law   (3)  autonomy held.  Court reviewed <u>Karns  v.  Shanahan</u> ; United States Court of Appeals, Third Circuit  879  F.3d  504  (3rd

Cir 2018) and reviewed the same three factors; Court of Appeals held that the state treasury funding factor weighed against finding sovereign immunity because New Jersey Transit concedes that it is not entirely reliant on state funds but rather it receives a combination of federal, state, and local funds to balance its budget. Intervening Supreme Court caselaw changed weighing each exception equally. The State Defendants have not provided proof confirming that DCF and OOL both satisfy the exceptions. Defendants only make reference to "the arm of the state" defense, with no mention as to whether DCF or OOL meet the other two prongs. Based on the information provided by the Defendants' attorney, it cannot be determined if State Defendants meet the three - prong exception to immunity or not. The depositions of those who are qualified to testify that the State Defendants are in fact immune would be needed. Defendants have not provided deposition to satisfy sovereign immunity. Defendants' attorney is providing a legal conclusion without any documentation or deposition but rather basing conclusions on Plaintiff's documents. Discovery is needed to ascertain the truth of the privilege. The State Defendants do not qualify for sovereign immunity because they each performed outside the scope of their duties as they utilized a legal inspection process for personal retaliation.

As noted above, The Eleventh Amendment does not stop a federal court from issuing an injunction against a state official who is violating federal law. Although the official may be abiding by state law, he is not permitted to violate federal law, and a federal court can order him to stop the action with injunction [Ex Parte Young. 209 U.S. 123 (1908) ] Money damages are possible against the state officer, as long as the damages are attributable to the officer himself, and are not paid from the state treasury. Scheuer v. Rhodes, 416 U.S. 232 (1974).

In <u>Cresci v. Aquino  Civ</u>. No 13 – 4695  (KM)  in (JBC)  (D.N.J. April 10, 2017), the County's

motion to dismiss on the eleventh amendment based on Section 1983 "person" grounds is

denied because it has made no demonstration that it acts as an arm of the state.   Similarly, the

burden is on the State Defendants to establish that the Eleventh Amendment applies in the case

against the Plaintiff.   The State Defendants only assert this defense but provide no document or

deposition to support this defense.   A conclusion is asserted without any supporting facts.

If defendants are to enjoy the State's sovereign immunity, then it must be because the State is

the "real party in interest" here.   <u>Haybarger  v.  Lawrence City Adult Probation and Parole</u>, 551

F.3d  193, 198  (3d cir. 2008); <u>Benn  v.  First Judicial Dist</u>. Of Pa., 426 F.3d, 233, 239  (3d cir.

2005)  (citing <u>Regents of the Univ. of Cal.  V.  Doe</u>,  519 U.S. 425, 429, 1997).   In determining

whether the State is the real party interest, the courts are to consider three factors: (1) whether

the source to pay a judgement would be the State treasury, (2) the status of the defendant

entity under State law, and (3) the defendant entity's degree of autonomy.   <u>Fitchik  v.  N.J.</u>

<u>Transit Rail Opereation</u>., Inc.,  873  F.2d  655, 659  (3s  cir.  1989).   The burden of establishing

immunity rests on the party asserting it.   <u>Chisolm  v.  McManimon</u>,  275  F.3d, 315, 323  (3d  cir.

2001).

Thirdly.   Defendants are equating all of Plaintiff's Civil Rights claims subject to the

immunity under the Eleventh Amendment.   These Defendants have not provided the Court with

any proof to satisfy their burden.   The above defense is applicable to Section 1983, if

Defendants cannot establish immunity, then Section 1983 applies.   Based upon what the

Defendants have provided, the three - prong test is not satisfied. Defendants are citing a legal

conclusion without any supporting facts. Third Circuit held that Rutgers is not entitled to

Eleventh Amendment immunity under the Federal Constitution. Kovats v. Rutgers, 822 F. 2d 1303, 1312 (3rd cir. 1987). Generally, the Eleventh Amendment provides immunity to a "State" from suits filed by citizens in federal courts, U.S. Const. amend XL. In determining whether Rutgers enjoyed such immunity, the Third Circuit considered whether the potential payment of a judgement would come from the state treasury, whether Rutgers forms a government function,  degree of autonomy, and whether Rutgers has the power to sue or be sued.  Kovats, Supra, 822, F. 2d

Title VII's Whistle-Blower Protection  "is not limited to those who blow the whistle or their own mistreatment or on the mistreatment of their own race, sex, or other protected class." This law is applicable to Defendant Clark who has violated the regulations as relevant to the licensing of child care centers, as she approved a "continued use" certificate of occupancy for a White center owner who opened a child care center in a building that was a "new" use and not a "continued use" violating both state and local fire and building codes. **(See Exhibits  C & D  )**

Title VII of the Civil Rights Act of 1964 forbids employment discrimination based on "race, color, religion, sex, or national origin."  42 U.S.C. § 2000 e – 2 (a), and its antiretaliation provision "forbids discrimination against" an employee or job applicant who has made a charge, testified, assisted or participated in a Title VII proceeding or investigation. Burlington N.; Santa Fe Co. v. White, U.S. June 22, 2006.

In Moore v. City of Philadelphia , Title VII provides:  "It shall be an unlawful employment practice for an employer to discriminate against any of his employees...because he has opposed any practice made an unlawful employment by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or

hearing under this subchapter." [T]hose claiming discrimination would show an "adverse employment action that alters the employee's compensation terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.    In Burlington, the Court concluded that the scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm.

In McKinnin  v. Alberto R. Gonzales Department of Justice, 642  F.  Supp. 2d  410, 436 (D.N.J. 2009) The Court denied defendant's motion for summary Judgement as to plaintiff's retaliation claim.  Plaintiff Henry E. McKinnon, an employee of the Federal Bureau of Prisons filed action against United States Department of Justice and Attorney General Alberto R. Gonzales, alleging defendants discriminated against him in violation of Title VII of the Civil Rights Act of 1964.  Similarly, three terminated police officers in McKenna v.  City of Philadelphia, No. 093567 (3d  (cir. Aug 17, 2011) alleged that they were disciplined in retaliation for protesting the discriminatory treatment afforded their African-American colleagues.  Jury found in favor of the Plaintiff's awarding them monetarily.

Fourth.  Qualified immunity is an affirmative defense that protects state officials who perform discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." Peakson v. Callahan, 555 U.S.  223, 231 (2009).   However, the qualified immunity is not a defense here.  The State of New Jersey has adopted a public policy against racial discrimination.  New Jersey also codified this public policy against racial discrimination by enacting the Law Against Discrimination.  It should also be said that the federal and state

constitution under both the fourteenth amendment, as well as the corresponding state version

of the equal protection under the law.  The articulated constitutional right is to be free from

discrimination.  The Defendants assert that they are immune under the qualified immunity but

has not provided any documents to support the training that was conducted regarding racial

discrimination.  Defendants' attorney did not include any qualifier to their motion, yet in her

Opposition to the Plaintiff's Notice of Motion to Leave to Amend the Second Complaint, she

acknowledged that there was discrimination.  How can there be a claim of immunity if racial

discrimination is acknowledged?   The Defendants' attorney also did not provide any testimony

as to how the Defendants' actions qualify them for immunity.  "Many Defendants argue that

they are entitled to qualified immunity."  [A]ny inquiry into qualified immunity is a fact-intensive

inquiry, the court declines to grant the motion at this early stage, prior to discovery, on grounds

of qualified immunity. Lasane  v.  Campos, United States District Court of New Jersey, Feb. 27,

2019 Ci. Action  No. 17-6316  (D.N.J. Feb.  27, 2019). " [I]t is generally unwise to venture into

qualified immunity analysis at the pleading stage as it is necessary to develop the factual record

in the vast majority of cases. " Coles  v.  Carlini,  No. 10-6132  (JBS), 2012  WL  1079446,  (D.N.J.

March 29, 2012). [T[the qualified immunity analysis is typically inappropriate for motions to

dismiss."

The conduct of these Defendants violated clearly established Constitutional Rights to be

free from Racial Discrimination of which a reasonable person would have known.  Qualified

immunity does not apply to Defendant Emond as she was acting in her capacity as a parent

during her participation in the long-term discrimination and not in her official capacity as a DCF

employee.  State Defendants conduct did violate clearly established Constitutional Rights of

which a reasonable person would have known and they did not perform discretionary functions but rather those acts which were racist, unlawful, egregious, and destructive to the Plaintiff's livelihood of thirty-one years. Absolute immunity cannot be applied to Defendants as the Civil Rights Act negate immunity. Harlow v. Fitzgerald 457 U.S. 800

Collectively, these State Defendants were all participants in a series of long-term, continuous, and racially discriminatory acts to destroy the Plaintiff's business through the abuse of a legal inspection process. Harlow v. Fitzgerald, 457 U.S. 800, Respondent filed claim against petitioners for civil damages alleged conspiracy to violate respondent's constitutional and statutory rights. The lower court found that the petitioners were entitled to qualified immunity; higher court vacated the judgement proceedings as the conduct violated clearly established statutory or Constitutional Rghts of which a reasonable person would have acknowledged. The burden of proof lies on the Defendants to prove that the immunity law applies.

Once a defendant raises the qualified immunity defense, a plaintiff has the burden of proving that (1) The State Official violated a statutory or Constitutional Right (2) the asserted right was "clearly established" at the time of the challenged conduct. Al-Kidd, 563 U.S. at 735. Plaintiff has proven more than enough to state a claim against that the State Defendants violated a statutory or Constitutional Right was clearly established at the time of the discriminatory acts.

The State Defendants consider the long-term discrimination as isolated discriminatory acts, when in fact, each act caused by these Defendants steamrolled into continuous and long-term discrimination that didn't cease. Each discriminatory act built upon the prior act resulted

in a snowball effect. The examples of continuous long-term discrimination caused by these Defendants is reflected in the Complaint.

Fifth. "NJ Litigation Privilege does not protect a party from tortious impact caused by a party's prior suit; it protects only statements made during the prior suit." Hawkins v. Harris; 141 N.J. 207, 216 (1995), and later in Loigman v. Twp. Comm. Of Middletown , 185 N.J. 566, 585 (2006). [I]f the action can be shown to be frivolous, vexatious or tortious – privilege is not cloaked. Hawkins v. Harris , 141 N.J. 207, 216 (1995), and later in Loigman v. Twp, which does not include racially discriminatory conduct by an attorney.

According to the Defendants' attorney, Defendant Ferlicchi, Deputy Attorney General is protected by Litigation Privilege.  Defendant  Ferlicchi's actions reflect racially  discriminatory conduct without any legal or legitimate purpose.  Defendant Ferlicchi went beyond the privilege by her actions.  She became personally involved in racially discriminatory conduct towards this Plaintiff.  She attempted to intimidate Plaintiff during deposition proceedings ( **See exhibit  E  )**; intentionally caused Plaintiff additional stress to cause aggravation to Plaintiff's neurological injury, by forwarding her a sonogram from her medical file of a baby that she miscarried, medical information not requested by Plaintiff during discovery nor relevant to the injury claimed; sent two armed and uniformed police officers to the Plaintiff's child care without good cause and without providing Plaintiff with a reason.  At no point did any Defendants advise that they felt threatened by Plaintiff.  At no time did Defendant Ferlicchi advise the judge who was presiding over the state court matter that the Plaintiff was a threat to public safety.  A provider who is caring for children and cannot obtain her permanent operating license for over ten years and requires **two** armed and uniformed police officers accompany three inspectors, on nine

occasions, should have her license revoked and doors locked.....but this never happened because there has never been any threat or any non-compliance by the Plaintiff. These acts have been ongoing and continues because the culture of NJ DCF allows for such egregious and unlawful behavior of their employees. At one point, the director of the discriminatory conduct was Defendant Beth Ferlicchi, a New Jersey Deputy Attorney General, who crossed a rubicon by ceasing her advocacy role and becoming a full fledge facilitator of racial discrimination. She became an active participant to the Plaintiff's detriment.

Sixth. When a Plaitniff's Complaint contains "well-pleaded factual allegations," the allegations should be presumed veracious, and the court should ascertain whether " plausibly give rise to an entitlement for relief ." Malleus, 641  F 3d. at  563; see also City of Cambridge, 908  F. 3d at 878 (finding that a district court must accept "all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" ). This finding requires more than a mere allegation of an entitlement relief or demonstration of the "mere possibility of misconduct." Fowler  V.  UPMC Shadyside, 578 F. 3d  203, 211 (3d Cir. 2009).

New Jersey Courts have determined in certain situations that an individual can be an employee due to control by the other party. New Jersey Courts have considered and ruled that it is plausible for someone to be an employee and not be on payroll. The State Defendants enforced restrictions upon the Plaintiff as though she were a State operated Head Start Program instead of a private business. The following was enforced:  curriculum implemented; classroom floor plan; approach to toilet training; amount of late fee assessed to parents when arriving late at departure; requiring visitors to be permitted to visit center anytime during the day; requirement that email be reviewed daily; business website required; business email required;

paper to be stored in cabinet not on shelves; no signs on cabinets.  These are considered "office rules" required by an employer.   The Plaintiff's right to operate as a sole proprietor was eradicated by the Defendants. The reference to remuneration for services in N.J.S.A.  § 34:19-2 (b) suggests that contracted providers can meet the definition of "employees" under § 34:19-2 (b) of N.J. conscientious Employee Protection Act, N.J.S.A § 34:19-1 to 8, even though they are not paid "wages" for their services so long as a fitting "control" and "direction" test is included in the review of the relationship. A reasonable person would acknowledge that the laundry list of requirements forced upon Plaintiff would confirm that she is in fact an "employee" who fits the Labor and Employment Law, Employment Relationships.

The State Defendants include a certification from Andre Maxwell, Director of Human Resources of New Jersey Department of Children and Families.  Clearly, Ms. Maxwell's certification is moot, as she is not familiar with the laws of Labor and Employment Law, Employment Relationships.  "Remuneration" is defined as the act of remuneration and therefore includes more than the payment of wages.  While Plaintiff does not receive a paycheck from DCF, ("the licensing Act"), N.J. Stat.  Ann § 30: 5B – 1 requires that only those centers who are licensed through OOL are permitted to receive funds generated through Child Care Assistance Programs.  These are funds that the Plaintiff receives because she is a licensed center.  Working for State Defendants and operating under their direction and their strict regulations enables Plaintiff to in fact receive payment from State funded grants. N.J.S.A.  The Appellate Division identified several factors to determine if an independent contractor is an employee under the N.J. Law Against Discrimination. This is inclusive of small business owners to whom the State Defendant attorney make reference.  In evaluating whether the plaintiff

D'Annunzio was an employee of Prudential, the N.J. Supreme Court looked beyond the traditional label typically utilized to describe an independent contractor.  Instead, it considered whether D'Annunzio's services have been incorporated into the employer's business and the impact that the relationship upon the individual's ability to offer his or her professional services to the public.

The Supreme Court examined "employer contract" and the "economic dependance" upon the work relationship, and the "degree to which there had been a functional integration of the employer's business with that of the person doing the work."  Independent contractors who perform regular or recurrent tasks that further the business interest of employer's enterprise may constitute an employee under CEPA. D'annunzio v. Prudential Insurance co.  No. A-119 2005 (July 25, 2007).

Plaintiff has been unable to incorporate her professional training as an educator and psychologist into her program as the State Defendant's have enforced their practices upon her and impeded her right to do so.   The State Defendants have applied the "Universal Pre-K" curriculum and other policies upon the Plaintiff, treating her as an employee.  Furthermore, New Jersey Supreme Court, extends Law Against Discrimination Independent Contractor Test to the Whistleblower Statue. Chrisanthis v. County pf Atlantic  361 N.J. Super. 448 (App. Div. 2003).  It was ruled that in certain circumstances, an independent contractor may be an employee under the NJ Whistleblower statue, the Conscientious Employee Protection Act (CEPA)… [u]nder the Supreme Court analysis, it is considered the pubic policy rationale behind the legislature enactment of the statute.  The Court recognizes that workers performing duties independently may nevertheless require whistleblower protection against retaliatory action.

Court adopted the test established by Pukowsku v. Caruso, 312 N.J. Super 171 (App. Div.

1998). D'Annunzio v. Prudential Insurance Co. No. A-119 2005 (July 25, 2007).

Seventh.  Defendants acknowledge that there are facts relating to Procedural Due

Process.  Racial Discrimination affects both property and liberty interests as Plaintiff was

affected by the intentional destruction of her business.  The trajectory of Plaintiff's life has been

altered over the last ten years as a result of  the State Defendants who interfered in the

economic operation of her business.  As a single mother, Plaintiff lost time with her three

children.  Her plans to retire in 2021 is non-existent. The "hostile takeover" of her small

business by the State Defendants turned the Plaintiff's thriving thirty-one-year- old business into

one that can barely survive. The State Defendants are analyzing the Plaintiff's claims without the

application of the law.

Title 59 says that State employees can be held liable for intentional and malicious acts.

These State Defendants cite that discriminatory conduct should be immune even though NJ

State has a public policy against discrimination.

The original law of Section 1983 allows public employees to sue their government

employer.  This law lives on in 42  U.S.C. § 1983, or "Section 1983."  Section 1983 allows people

to file a lawsuit against those who use the law to deprive others of their rights under the United

States Constitution or federal laws.  The government and government officials cannot abuse

their power to deprive people of their rights.

Lawsuits under Section 1983 can be brought in New Jersey Superior Court or Federal

Court.  Employees have the right to a trial by jury. Successful employees can recover

compensatory damages, such as lost pay and emotional distress, and sometimes punitive

damages.  These employees can may also have their litigation costs and attorney fees paid for

by the defendants.  People and government entities who violate these rights can be sued

although state government and its employees are immune from suit under Section 1983

because of the Eleventh amendment.

In 2004, Governor McGreevey signed the New Jersey Civil Rights Act.  The Act was

designed to be the state counterpart to Section 1983 of the Civil Rights Act of 1871, and to

provide a remedy for violation of state, as well as federal rights.  [T]he New Jersey Civil Rights

Act provides suits against the state government.

The State Defendants failed to provide a procedural due process which affected Plaintiff's

ability to earn a living due to the racial discrimination.  Without the procedural due process

Plaintiff lost money, time, and her stellar reputation, which was affected by the discriminatory

treatment.  Plaintiff was deprived of her property interest.  Plaintiff had no ability or right to be

heard.  Defendants made a unilateral decision to disallow Plaintiff to be heard.  Plaintiff's claims

were not unfounded, Defendants simply failed to investigate.  This affected the liberty and

property interest.

State Defendants spent more time and government resources investigating the Plaintiff's

business, than they did with those centers were providers and or staff were found guilty of child

molestation. The Defendants' attorney accuses Plaintiff for excessive use of government

resources due to her Complaint, instead of considering the Defendants who used excess

government resources to racially harass and terrorize Plaintiff during her working day.  There are

45 inspectors from OOL and over 5,000 child care centers in the NJ.  Rather than utilize those

inspectors to ensure the safety of young children by spending time at centers who warrant

additional monitoring, the State Defendants have spent ten plus years, sending most of the 45

inspectors to retaliate against the Plaintiff through the use of a legal inspection process for

personal use. The Plaintiff treatment reflects disparate treatment through the partial list of

following acts by Defendants:

1. Over 25 investigative-like inspections over a time period when the number of typical inspections would be 5.
2. Threatened to revoke Plaintiff's license without good cause and unlawfully in direct violation of Chapter 52.
3. Arrive on nine occasions with gun carrying and uniformed police. Plaintiff contacted local police and file a report   **(See Exhibits F, G, & H )**
4. Attempting to withhold  Plaintiff's permanent license   **(See Exhibit I )**
5. Continually published fabricated violations on inspection report, even days after local health department conducted identical inspection and found no violations **(See Exhibits   J, K, L, M, N, O , & P )**
6. Continually publishing fabricated violations on inspection report, even after non-defendant inspector arrived for an inspection and excluded each and every violation cited several weeks earlier by Defendant inspectors.  **(See Exhibit Q & R )**
7. Violated Open Public Records Act as stated in Chapter 52
   Fabricated violations report was published on public website while Plaintiff was required to complete an OPRA application to review her file. **(See Exhibit S )**
8. State Defendants permitted Defendant Emond to fie an informal complaint against Plaintiff instead of requiring her to file a complaint according to Chapter 52
9. Eight email forwarded to State Defendants from January 22, 2021 through April 27, 2021 requesting answers for the intentional mismanagement of my file and inspection reports with no response.  **(See Exhibits T, U, V, W, X, Y, Z & AA )**
10. Notarized letter from former teacher (now a registered nurse) describing her experience with the Defendant inspectors. **(See Exhibit BB )**
11. Letter from Plaintiff's landlords confirming their experiences with the Plaintiff as occupant in their building as compared to other center owners, confirming that Plaintiff was a target. **(See Exhibit CC )**

Eighth. Defendants violated Plaintiff's right to procedural due process.  Defendants

violated Plaintiff's liberty and property interest via racial discrimination, that which she had a

right to be free.  The discrimination caused the Plaintiff to experience loss from liberty and property interest which affected her ability to maintain her child care license issued by the Defendant Office of Licensing.  No procedural due process mechanism was/is available to challenge the racial discrimination along with other allegations.  While Chapter 52 does include provisions for an administrative hearing, Defendants do not adhere to it and did not permit Plaintiff the right to apply the noted regulation as cited. Both the Plaintiff's liberty and property interest were articulated her Complaint.  Defendant's attorney understands that the Plaintiff is articulating a violation of procedural due process right.  Notice has been given.  This Plaintiff is not required to articulate this Complaint as an attorney.  Plaintiff is only a pro se.  Plaintiff is saying that there is a loss of both a liberty and property interest.  At no time, is Plaintiff seeking a redress of an internal deliberation process.  No one assisted or made themselves available to coordinate a hearing for this Plaintiff.

Plaintiff was/is not treated as the White childcare owners.  Disparate treatment was provided.  The Plaintiff's Complaint articulates notice of it.  These other owners provided Plaintiff with details of their experiences with the Defendants during an inspection process.  Disparate treatment was included during the COVID inspection.  None of these center owners had any incentive not to tell the truth as to these inspections.  Nor did the Plaintiff have to be present at the time the of the inspection.  Executive Order 192 was not equally applied to Plaintiff and the mostly children of color and her staff, women of color.  What is the purpose of an Executive Order if it is not going to be applied equally to every child care owner regardless of race and or gender?  Additionally, the Defendants have not provided any documentation and subject to cross examination regarding the Eleventh Amendment Immunity.

The Plaintiff's Title 7 Claim is not time barred.  From the Pro se Plaintiff's perspective, she exhausted all remedies. The Defendants' attorney acknowledged that a right to sue letter "may" be issued which means that there is no obligation to receive such documentation.  The Plaintiff was not was not bound by the time period because the letter was not issued to her.  Yet the Plaintiff did file this claim with the appropriate period of time.  The Defendant is not correct regarding the application of immunity relevant to Title 7.  Congress abrogated this right to immunity concerning Title 7 of the Civil Rights Act.  The Defendants claim Immunity, but state employees are not automatically immune from the Eleventh Amendment Immunity Clause as under the Federal Constitution.  Civil Rights trumps the Immunity Law.  Qualified Immunity shields government officials from "liability for civil damages insofar their conduct does not violate clearly established statutory or constitutional rights."  Harlow v. Fitgerald, 457 U.S. 800.

 Defendants' attorney suggests that a day care provider doesn't have a right to be protected under and Executive Order imposed by the Governor of New Jersey during a health state of emergency.  The "alleged" white center owners who advised Plaintiff of the length of their COVID inspection received an inspection that all providers in New Jersey were expecting. "They" did not have an inspection out of the ordinary, Plaintiff did.  The reckless and egregious conduct by the Defendants ( Defendant O'Connell  failed as a center owner) is disturbing.  The two Defendants arrived for a "COVID " inspection in the midst of the pandemic when thousands of people in northern New Jersey would succumb to this mysterious illness. The two White inspectors had a complete disregard for the many children of color in attendance and the staff (all women of color).  Under Public Employees Occupational Safety and Health Act, 34:6A-33

"Every public employer shall (a) Provide each of his employees with employment and a place of employment which are free from recognized hazards which may cause serious injury ,physical harm or death to his employees, and (b) Comply with occupational safety and health standards promulgated under this act.

An implied contract existed between this Plaintiff and these Defendants. According to Defendants, Plaintiff was not entitled to a normal inspection process or an inspector.  How would such a business where child care service is provided for young children operate if there is not a contract  between provider (OOL)? If the plaintiff complied with Chapter 52 , then a license and its renewal would be issued.  According to Black's Law Dictionary 389 (20th ed. 2014) the legal definition of a "contract' is "an agreement between two or more parties creating obligations that are enforceable otherwise recognizable at law."  The Supreme Court of New Jersey has consistently held that "all contracts contain as implied covenant of good faith and fair dealing." Mullo v. Passaic Valley Sewarage  2009 U.S. Dist. 2009 WL 5216976. There was a requirement of cooperation between the parties.  It was widely distributed to all childcare center owners in the State of New Jersey.  There was a good faith and fair dealing requirement that Chapter 52  was to be applied to the Plaintiff.  Racial discrimination resulted and caused the Plaintiff to experience loss. Why distribute a manual if it is not going to be applied uniformly to all providers regardless of race ?

Finally, Pursuant to Rule 8 (a) 2 Federal Rules of Civil Procedure, Plaintiff "requires only a short and plain statement of a claim showing that the pleader is entitled to relief, in order to give a defendant fair notice of what the claim is and the grounds upon which it rests."

Bell Atl. Corp. v. Towbly 550 U.S. 544 127 S. Ct. 1955 167L Ed. 2d 929. The Plaintiff has been required to provide documentation and proof above and beyond what would typically be expected from a Plaintiff filing a cliam.

## Conclusion

For the reasons set forth above, as well as that stated in the Notice of Motion In Opposition of the Defendants' Motion to Dismiss. The Defendant's Motion to Dismiss should be denied.

Respectfully Submitted,

Attallah Brightwell, Pro se

Dated:  May 22, 2023

Oral argument is requested for this Motion