<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATTALAH BRIGHTWELL,<br><br>                                            Plaintiff,<br><br>    v.<br><br>NEW JERSEY DEPARTMENT OF<br>CHILDREN AND FAMILIES AND OFFICE<br>OF LICENSING, *et al.*,<br><br>                                            Defendants. | Case No. 22cv3016 (EP) (ESK)<br><br>**OPINION** |

**PADIN, District Judge.**

*Pro se* Plaintiff Attalah Brightwell brings this action against Defendants New Jersey Department of Children and Families, Office of Licensing, Maria Altamirano, Diane Camiso, Sharonda Clark, Helen Emond, Beth Ferlicchi, Antoinette Franklin, Janet Hochman, Antoinette Mahan, Kathryn O'Connell, Theresa Roessner, Brian Ross, Julissa Stobnicki, Jennifer Thiel, and Marilyn Weiss (collectively, "Defendants"), asserting federal claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981 ("Section 1981"), 42 U.S.C. § 1983 ("Section 1983"), as well as several state claims, all of which arise from inspections of Plaintiff's childcare center and the non-issuance of a childcare center license. D.E. 75 ("SAC"). Defendants now move to dismiss Plaintiff's Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] D.E. 83-1 ("Mot."); D.E. 93-2 ("Mot. 2").

---

[1] Defendant Julissa Stobnicki moves to dismiss Plaintiff's SAC separate from the other Defendants, who otherwise move to dismiss Plaintiff's SAC together. However, all Defendants are now represented by New Jersey Deputy Attorney General Elizabeth A. Boylan. *See* D.E. 91. Because the motions have substantial overlap, they are considered together for the purposes of this Opinion, and they are distinguished only where necessary.

The motions will be decided on the papers. Fed. R. Civ. P. 78(b); L.Civ.R.78.1(b). For the reasons set forth below, the Court will **GRANT** Defendants' respective motions to dismiss, **DISMISS** Plaintiff's federal claims, and **DECLINE** to exercise supplemental jurisdiction over Plaintiff's state claims.

I. **BACKGROUND**[2]

A. **Parties**

Plaintiff is the owner of The Brightwell Center for Children, a New Jersey-based childcare center, which has been operating since 1991. SAC ¶ 9. Defendant Department of Children and Families ("DCF") is a New Jersey agency tasked with serving and supporting at-risk children and families. *Id.* ¶ 10. Defendant Office of Licensing ("OOL") is the division within DCF tasked with the licensing and regulation of New Jersey childcare centers. *Id.* ¶ 11.

Defendant Helen Emond is a former DCF employee, whose two children were previously enrolled at Plaintiff's childcare center. *Id.* ¶¶ 12, 35. Defendant Antoinette Mahan was DCF's director. ¶ 17. Defendants Brian Ross and Diane Camiso were DCF in-house attorneys. *Id.* ¶ 18.

Defendants Maria Altamirano, Sharonda Clark, Antoinette Franklin, Kathryn O'Connell, Julissa Stobnicki, and Jennifer Thiel were OOL licensing inspectors. *Id.* ¶ 13. Defendants Theresa Roessner and Marilyn Weiss were OOL supervisors. *Id.* ¶¶ 14-15. Defendant Janet Hochman was an OOL administrator. *Id.* ¶ 16.

---

[2] The facts in this section are taken from the well-pled factual allegations in the SAC, D.E. 75, and the Supplemental Pleading, D.E. 77, which the Court presumes to be true for purposes of resolving the instant motions. *See Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012). The Court is not required to accept as true "mere conclusory statements." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (internal quotations omitted).

Defendant Beth Ferlicchi ("Former DAG[3] Ferlicchi") was an attorney involved in defending against the tort action that Plaintiff filed in New Jersey Superior Court, Passaic County, in 2015. *See* SAC ¶ 37.

**B. Relevant New Jersey Law**

New Jersey's Child Care Center Licensing Act ("Act"), N.J.S.A. 30:5B-1 *et seq.*, governs New Jersey childcare center operations and maintenance. Under the Act, DCF is afforded broad discretion in the licensing and inspecting of childcare centers. N.J.S.A. 30:5B-5. Relevant here, the Act provides that DCF "shall conduct an on site facility inspection and shall evaluate the program of the child[care] center to determine whether the center complies with the provisions of this [A]ct[,]" "shall have the authority to inspect and examine the physical plant of facilities of a child[care] center . . . during normal operating hours and without prior notice[,]" "shall request the appropriate State and local fire, health and building officials to conduct examinations and inspections to determine compliance with State and local ordinances, codes and regulations by a child[care] center." N.J.S.A. 30:5B-5(b), (d), (e). The Act also provides that rules and regulations concerning "license application, issuance, renewal, expiration, denial, suspension and revocation[,]" fall within DCF's broad discretion. *See* N.J.S.A. 30:5B-5(a). Moreover, Chapter 52 of the Manual of Requirements for Child Care Centers ("Chapter 52"),[4] N.J.A.C. 3A:52-1.1, prescribes that when "a person intends to care for six or more children under 13 years of age, [she] shall apply for and secure from [OOL] a license to operate a child[care] center."

**C. Factual Background**

*1. Pre-2015 State Action*

---

[3] Deputy Attorney General.
[4] Promulgated pursuant to the Act.

3

Plaintiff claims that she terminated childcare services for Emond's two children, and that as a result, Emond, acting as a "disgruntled parent . . . outside the scope of her employment [with DCF] . . . filed an informal Complaint without any legitimate basis with the Defendant inspectors." SAC ¶ 35. Plaintiff adds, therefore, "Emond was the catalyst of [what became] long-term racial discrimination [through the] utiliz[ation of] OOL's licensing inspection process to racially discriminate against the Plaintiff." *Id.* ¶¶ 35, 62. Plaintiff's core allegations can be boiled down to OOL's licensing inspections and issuance of only a temporary childcare center license to Plaintiff, beginning in 2012 or 2013.[5] *See id.* ¶¶ 61-62, 73.

In summary, Plaintiff alleges the following series of events. Thiel inspected Plaintiff's childcare center without first communicating to Plaintiff a reason for the inspection and without informing her of the results prior to the next visit by Clark and Stobnicki. *Id.* ¶ 36. Thiel advised "Plaintiff that her center was 'the filthiest that she had ever seen' . . . ." *Id.* Thiel "threatened the Plaintiff with unlawfully reducing the number of children" that Plaintiff was permitted to enroll, which Plaintiff believes was done with the intent to lower her "ability to have students, by discriminating against the Plaintiff due to her national origin causing her to be unable to compete with the White [childcare] center that Defendant Thiel was [also] assigned [to]." *Id.*

Between 2013 and 2015, Clark and Stobnicki inspected Plaintiff's childcare center in a manner that Plaintiff believes was "retaliate[ion] against her for terminating the children of [Emond] and for reporting [Thiel] to OOL administrators." *Id.* ¶ 37. Clark and Stobnicki purportedly posted "fabricated violations" on an unspecified website, providing that Plaintiff's

---

[5] It is unclear whether the alleged conduct Plaintiff alleges occurred began in 2012 or 2013, given that the SAC provides, "[f]rom 1991 until 2012[,] Plaintiff enjoyed a productive and pleasant working relationship with the Staff of OOL[,]" SAC ¶ 34, but also,"[p]rior to 2013, Defendant Thiel was the first of the Defendants to begin the series of long-term, racially discriminatory event[s,]" SAC ¶ 36.

4

childcare center was "'dirty' with toys and equipment that [was] in 'disrepair' . . . ." *Id.* They "conducted unwarranted and lengthy inspections" in noncompliance with Chapter 52, "verbally attacked the Plaintiff and threatened to revoke her license, without good cause[,]" and cited Plaintiff for additional "fabricated violations." *Id.*

Between 2015 and 2018, Hochman, Mahan, Ross, and Weiss, in a manner unspecified by Plaintiff, "encouraged and supported the racially discriminatory conduct of the Defendant/Inspectors[,]" and "would not permit the Plaintiff to have an Administrative hearing or address her concerns about the fabricated violations . . . ." *Id.*

In 2015, Plaintiff filed a tort action in New Jersey Superior Court, Passaic County, against OOL, Emond, Clark, Hochman, Mahan, Theil, and Weiss ("2015 State Action") alleging she was injured by the excessive OOL licensing inspections and withholding of her permanent childcare center license.  *See generally* D.E. 83-2, Ex. A.[6]

2.  *Post-2015 State Action*

Between 2016 and 2018, during the pendency of the 2015 State Action, Former DAG Ferlicchi became involved and purportedly "violated her responsibility as an attorney and joined the other Defendants in the racially discriminatory acts against the Plaintiff through extreme racial prejudice and pressure by assigning two uniformed and gun carrying police officers to accompany [Franklin] and [Altamirano] to conduct nine unwarranted, investigative-like inspections of Plaintiff's center." SAC ¶ 37. During discovery, Plaintiff claims that Former DAG Ferlicchi requested the contact information of Plaintiff's gynecologist, "becom[ing] so personally involved

---

[6] The Court takes judicial notice of the 2015 State Action and filings therein. *See Century Indem. Co. v. Congoleum Corp.*, 426 F.3d 675, 679 n.2 (3d Cir. 2005) (internal quotation marks and citation omitted) (taking judicial notice of relevant state court proceedings and noting that "judicial notice can be taken of certain facts such as that a document was filed, a position taken, [or] an admission or allegation made").

5

in the vendetta against the Plaintiff that she forwarded a sonogram from the Plaintiff's file . . . . [Thus, Plaintiff] was subjected to revisit a traumatic period in her life[.]" *Id.*

In 2017, Plaintiff believes Altamirano and Franklin impersonated "a parent to file false claims against the Plaintiff and attempted to encourage the local fire chief to file a false report." *Id.*

In 2018, the New Jersey Superior Court, Passaic County, granted summary judgment in favor of the defendants in the 2015 State Action. *See generally* D.E. 83-2, Ex. B. Plaintiff appealed. SAC ¶ 38. In 2020, the Appellate Division affirmed the lower court. *See generally* D.E. 83-2, Ex. C. Plaintiff did not appeal.

In 2020, O'Connell and Roessner conducted a COVID inspection of Plaintiff's childcare center. SAC ¶ 40. Plaintiff was not present for this inspection, but claims the inspectors failed to follow safety precautions, including "show[ing] proof that they were fever free; didn't hand wash; didn't maintain 6 feet from children or staff; and extended their visit for 90 minutes as they stood in a dark room with two staff supervised while 15 children slept." *Id.* ¶¶ 40-41. Plaintiff contacted O'Connell, who purportedly "racially discriminated" against Plaintiff in answering Plaintiff's questions related to the removal of a wall at the childcare center. *Id.* ¶¶ 41-42. Plaintiff received a violations report following this inspection. *Id.* ¶ 45. Plaintiff asserts that "White center owners" did not have "lengthy COVID inspection[s.]" *Id.*

In 2021, an OOL inspector—not a Defendant—advised Plaintiff that she was required to hold a certificate from the New Jersey Department of Fire Safety. *Id.* ¶ 48. Plaintiff indicated that she had difficulty obtaining that document each year and that other OOL inspectors and administrators did not assist her in obtaining it. *Id.* The OOL inspector informed Plaintiff that she

had not been able to obtain the required certificate due to "several unpaid fees" "dating back to 1998[.]" *Id.* ¶ 49. This "certificate was the only outstanding violation on the report[.]" *Id.* ¶ 51.

Camiso issued Plaintiff another temporary childcare center license, explaining that Plaintiff was to obtain the required certificate from the New Jersey Department of Fire Safety. *Id.* ¶ 52. However, Plaintiff believes that she was not issued a permanent childcare license due to racial discrimination, as the missing certificate "was the only outstanding violation[.]" *Id.* Camiso advised Plaintiff that her communications with DCF should be forwarded to her, rather than to "the Black female Inspector[.]" *Id.* ¶¶ 53, 56. But Plaintiff subsequently requested that Camiso not contact her because of the pending action. *Id.* ¶ 54.

In December 2022, Plaintiff submitted a "Life Safety Certificate," which Plaintiff believes should have satisfied the requirements for obtaining a permanent childcare center license, but she was, instead, issued another temporary license. *Id.* ¶ 59. Plaintiff claims that Ross informed her that the temporary nature of the license was an "oversight." *Id.* ¶ 60.

Based on the foregoing, Plaintiff alleges that she has been barred from receiving a permanent childcare center license due to racial discrimination because she has only been issued temporary licenses since 2013. *See id.* ¶¶ 50, 61.

**D.  Procedural Background**

In May 2022, Plaintiff filed the Initial Complaint in this action. D.E. 1. In July 2022, Plaintiff moved to amend the Initial Complaint, D.E. 11, which the Court[7] granted, D.E. 13. In August 2022, Plaintiff filed the Amended Complaint. D.E. 15. In November 2022, Defendants moved to dismiss the Amended Complaint, arguing, *inter alia*, certain claims were barred by *res judicata* and collateral estoppel. D.E. 44-1. In response, Plaintiff moved to amend the Amended

---
[7] Magistrate Judge Kiel.

Complaint, claiming she was seeking to "clarify and refine her claims against . . . [all] Defendants to support" her claims. *See* D.E. 59; 67. Plaintiff's motion was opposed by Defendants. D.E. 59. Ultimately, Plaintiff was granted an opportunity to file the SAC. D.E. 73.

In March 2023, Plaintiff filed the SAC, raising a mix of federal and state claims related to OOL's licensing inspections and the issuance of Plaintiff's childcare center license. *See generally* SAC.[8] In May and August 2023, Defendants filed their respective motions to dismiss the SAC. Mot.; Mot. 2. Plaintiff opposed both motions. D.E. 87; D.E. 94. Defendants, except Stobnicki, replied. D.E. 88. Defendants' respective motions are now ripe for the Court's review.

## II. LEGAL STANDARD

A defendant may move to dismiss an action for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). In reviewing a motion to dismiss for failure to state a claim, a reviewing court accepts all well-pled factual allegations as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). To survive a Rule 12(b)(6) challenge, the plaintiff's claims must be facially plausible, meaning that the well-pled factual allegations "allow[ a reviewing] court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[8] In March 2023, Plaintiff also filed a Supplemental Pleading containing additional factual allegations in support of the claims made in the SAC. D.E. 77.

Finally, "[i]n deciding a Rule 12(b)(6) motion, a court may consider only the complaint, exhibits attached to the complaint, and matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (3d Cir. 1996)) (holding that a court reviewing a motion to dismiss may consider a "'*document integral or explicitly relied upon* in the complaint'" without converting the motion into one for summary judgment); *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that a court may examine an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

## III. DISCUSSION

### A. *Res Judicata* Bars Plaintiff's Claims Arising from Conduct Pre-Dating the 2015 State Action

The claims in Plaintiff's action, arising from events that occurred before and up to the filing of the 2015 State Action, are barred by the doctrine of *res judicata* as to all Defendants, except Former DAG Ferlicchi.[9] [10]  In determining whether *res judicata* has a preclusive effect on a pending action, "federal courts should apply the general rule that the preclusive effect of a judgment is determined by the preclusion law of the issuing court . . . ." *Paramount Aviation Corp.*

---

[9] Defendants do not argue that *res judicata* bars Plaintiff's claims against all Defendants; instead, they raise this issue only with respect to three Defendants.  However, the Court analyzes whether *res judicata* applies to all Defendants *sua sponte*.  *See King v. East Lampeter Twp.*, 69 F. App'x 94, 96 (3d Cir. 2003) (affirming the district court's *sua sponte* dismissal of a *pro se* action based on *res judicata*); *Pasqua v. City. Of Hunterdon*, 2017 U.S. Dist. LEXIS 194244, at *23 n.10 (D.N.J. Nov. 27, 2017) (collecting cases) (dismissing action *sua sponte* based on *res judicata*).

[10] Defendants argue that both *res judicata* and collateral estoppel preclude Plaintiff's claims with respect to three Defendants.  However, a full analysis of collateral estoppel is unnecessary as the Court ultimately concludes that *res judicata* precludes Plaintiff's pending claims concerning the complained-of conduct that occurred before the 2015 State Action was filed.

*v. Agusta*, 178 F.3d 132, 135-36 (3d Cir. 1997). Because this action involves a previous decision—the 2015 State Action—issued by a New Jersey state court, the Court must look to New Jersey's *res judicata* doctrine. *See Sutton v. Sutton*, 71 F. Supp. 2d 38, 389 (D.N.J. 1999) (applying New Jersey's preclusion doctrines).

*Res judicata*[11] is "a court-created rule designed to draw a line between the meritorious claim on the one hand and the vexatious, repetitious and needless claim on the other hand." *Purter v. Heckler*, 771 F.2d 682, 689-90 (3d Cir. 1985) (footnote and citation omitted). It "bars a party from initiating a second suit against the same adversary based on the same 'cause of action' as the first suit." *Duhaney v. Atty. Gen. of U.S.*, 621 F.3d 340, 347 (3d Cir. 2010) (citing *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008)). To establish that *res judicata* applies, a party must establish: "(1) a final judgment on the merits; (2) the prior suit involved the same parties or their privies; and (3) the subsequent suit is based on the same transaction or occurrence." *Williams v. Litton Loan Servicing*, 2018 U.S. Dist. LEXIS 211828, at *22 (D.N.J. Dec. 17, 2018) (citing *Watkins v. Resorts Int'l Hotel and Casino, Inc.*, 124 N.J. 398, 412 (1991); *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984)); *see also In re Mullarkey*, 536 F.3d at 225 (quoting *Post v. Hartford Ins. Co.*, 501 F.3d 154, 169 (3d Cir. 2007) (*Res judicata* "'not only [bars] claims that were brought in a previous action, but also claims that could have been brought'")).

The first element is met. Disposition of an action via summary judgment constitutes a final judgment on the merits. *See Hubicki v. ACF Indus., Inc.*, 484 F.2d 519, 524 (3d Cir. 1973) ("[T]he law is clear that summary judgment is a final judgment on the merits sufficient to raise the defense of *res judicata* in a subsequent action between the parties."). Here, in the 2015 State Action, the

---

[11] Or claim preclusion.

10

New Jersey Superior Court granted summary judgment against Plaintiff in 2018,[12] and the New Jersey Appellate Division affirmed in 2020.[13]  Therefore, a final judgment on the merits was reached.

The second element is met as to all Defendants, except Former DAG Ferlicchi. Defendants, except Former DAG Ferlicchi, were either defendants in the 2015 State Action or enjoy a sufficiently close relationship with those defendants for there to be privity among them. Every defendant in the 2015 State Action is also a party to this action—OOL, Clark, Emond, Hochman, Mahan, Stobnicki, and Weiss.  *Compare* 83-2, Ex. A. *with* SAC.  The only difference between the parties in the 2015 State Action and this action is that Plaintiff has now included DCF and additional DCF/OOL employees, Franklin, Altamirano, Rossener, O'Connell, Ross, and Camiso, as well as Former DAG Ferlicchi as Defendants.  *See Hickox v. Cty. of Blair*, 591 F. App'x 107, 110 (3d Cir. 2014) (affirming district court's dismissal of a plaintiff's subsequent complaint based on claim preclusion, despite fact that subsequent complaint included an additional defendant not named in previous complaint); *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 261 (3d Cir. 2010) (concluding the "same parties or their privities" element was met because the plaintiff and the defendant-company were parties in both actions, and that additional parties were included in subsequent action did not alter conclusion).  Thus, with respect to Clark, Emond, Hochman, Mahan, Stobnicki, and Weiss, the second element of *res judicata* is met by virtue of Plaintiff bringing this action against the same parties.

As to Altamirano, Camiso, Franklin, O'Connell, Ross, and Rossener, Plaintiff brings claims against them only for actions they took in their capacities as DCF/OOL employees.  Thus,

---

[12] D.E. 83-2, Ex. B.
[13] D.E. 83-2, Ex. C.

because they were acting in furtherance of DCF/OOL's interests, Altamirano, Camiso, Franklin, O'Connell, Ross, and Rossener's interests are sufficiently aligned with the interests of DCF/OOL, such that there is privity among them. *See Opdycke v. Stout*, 2005 U.S. Dist. LEXIS 30199, at *18-19 (D.N.J. Nov. 30, 2005) (explaining that the township employes were being sued for actions they took while "acting within the scope of their employment [for the township] and their acts were done in furtherance of the interests of [the township]," such that "the reality of the parties' relationship" was that "the interests of [the township employees were] aligned with that of the [t]ownship and there is privity among them").

Only Former DAG Ferlicchi cannot meet the second element as she was not a party to the 2015 State Action and lacked privity with the defendants in that action.

The third element is also met as to all Defendants, except Former DAG Ferlicchi. "In determining whether a subsequent suit involves the same claim, a court should not look to the specific legal theories asserted, 'but rather the essential similarity of the underlying events giving rise to the various legal claims.'" *Baran v. ASRC MSE*, 2023 U.S. Dist. LEXIS 35661, at *16 (D.N.J. Mar. 3, 2023) (quoting *Elkadrawy v. Vanguard Grp., Inc.*, 548 F.3d 169, 173 (3d Cir. 2009)); *see also Estate of Semprevivo v. Atl. Cty.*, 2019 U.S. Dist. LEXIS 150358, at *11-12 (D.N.J. Sept. 4, 2019) (concluding *res judicata* bars claims where "[t]he same series of transactions underlie" the claims, regardless of whether "the legal theories are different" because "the focus is on the facts"). Therefore, that "a party relies on different statutes and theories of recovery or seeks different relief in each action 'does not [automatically] render its claims different causes of action for *res judicata* purposes.'" *Baran*, 2023 U.S. Dist. LEXIS 35661, at *16-17 (brackets in original and italics added) (quoting *Athlone Indus., Inc.*, 746 F.2d at 984).

12

Here, the underlying events in Plaintiff's 2015 State Action and the pending action are essentially the same. The 2015 State Action and the pending action set forth the same core allegations: DCF/OOL, through its employees, excessively inspected Plaintiff's childcare center during the license renewal process beginning in 2013 and did not grant Plaintiff a permanent license to run her childcare center. *Compare* D.E. 83-2, Ex. A. at 13-18 (outlining series of OOL licensing inspections and granting of only temporary childcare center license to Plaintiff since 2013) *with* SAC ¶¶ 3, 61, 71 (outlining OOL's "investigative-like unwarranted inspections" and the non-issuance of a permanent three-year childcare license to Plaintiff since 2013). Moreover, in both actions, Plaintiff alleges that she met with Emond, who previously had a child enrolled at Plaintiff's childcare center, to discuss the child's behavior. D.E. 83-2, Ex. A. at 10 ¶ 5; SAC ¶ 35. In the pending action, Plaintiff alleges that it was this confrontation with Emond that triggered the subsequent discrimination Plaintiff faced during the license renewal process. SAC ¶ 35 ("Defendant Emond was the catalyst of this long-term racial discrimination utilizing Defendant OOL's licensing inspection process to racially discriminate against the Plaintiff.").

Additionally, the relief Plaintiff seeks in the pending action is the same as what she sought in the 2015 State Action: monetary relief (*e.g.*, compensatory damages and lost wages). *Compare* D.E. 83-2, Ex. A. at 20 *with* SAC at 55. The same evidence would also be necessary in the pending action as was necessary in the 2015 State Action, namely, evidence of the inspections conducted on Plaintiff's childcare center.

Because both the claims in the 2015 State Action and the claims in the pending action arise out of the same underlying events, Plaintiff should have presented all her legal theories—related to the inspections that took place between 2013 and the date she filed her first action, as well as with respect to the non-issuance of a permanent childcare center license—in the 2015 State

Action.[14] *See Watkins*, 124 N.J. at 413 ("If, under various theories, a litigant seeks to remedy a single wrong, then that litigant should present all theories in the first action."). But Plaintiff did not. Therefore, the claims Plaintiff brings in this action, which could have been brought in the 2015 State Action, are barred by *res judicata*. *See id.* ("[T]heories not raised will be precluded in a later action.").

Accordingly, to the extent Plaintiff's claims arise from the inspections that occurred before the filing of the 2015 State Action and the non-issuance of a permanent childcare center license, those claims will be dismissed on *res judicata* grounds against all Defendants, except Former DAG Ferlicchi.[15]

**B. Counts 1 and 2 – Plaintiff's 42 U.S.C. § 1983 Claims Will Be Dismissed**

Counts 1 and 2, Plaintiff's Section 1983 claims, are not brought against any proper defendants. The only exception is Emond, however, because all claims against Emond are barred by *res judicata*,[16] Plaintiff's Section 1983 claims will, nonetheless, be dismissed in their entirety.

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, or any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights . . . secured by the Constitution . . . shall be liable to the party injured in an action at law . . . ." 42

---

[14] Plaintiff's claims encompass her complaints related to inspections of her childcare center that took place between 2013 and 2020. Because *res judicata* does not apply to events post-dating the filing of the first action, Plaintiff's claims related to inspections that took place after the 2015 State Action was filed are not barred by *res judicata*. *See Morgan v. Covington Twp.*, 648 F.3d 172, 178 (3d Cir. 2011) (holding *res judicata* does not bar claims predicated on actions that post-date the filing of the initial complaint). However, Plaintiff's claims arising from the inspections post-dating the filing of the 2015 State Action will be dismissed on other grounds.

[15] While not fully analyzed in this Opinion, statute of limitations issues also exist with respect to the actions Plaintiff alleges took place leading up to the filing of the 2015 State Action.

[16] The allegations against Emond arise exclusively from conduct that occurred prior to the filing of the 2015 State Action. *See* SAC ¶¶ 3, 12, 35-37.

14

U.S.C. § 1983. However, "[n]either a state nor its officials acting in their official capacities are 'persons' under [Section] 1983.'" *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). But "a state official in his or her official capacity, when sued for injunctive relief, would be a person under [Section] 1983 because 'official-capacity actions for prospective relief are not treated as actions against the [s]tate.'" *Id.* at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Ex parte Young*, 209 U.S. 123, 159-60 (1908)).

Several relevant points justify why Plaintiff's Section 1983 claims fail. First, DCF is a New Jersey state agency and OOL is a licensing and regulatory authority within DCF, meaning that neither are "persons" within the scope of Section 1983, and therefore, they are not amenable to suit under Section 1983. *See Gonzalez v. N.J. Dep't of Children & Families, Div. of Child Prot. & Permanency*, 545 F. Supp. 3d 178, 201 (D.N.J. 2021) ("DCF [is] not [a] 'person[]' subject to suit under Section 1983."). Accordingly, Plaintiff's Section 1983 claims will be dismissed with prejudice as to DCF and OOL.

Second, with the exception of Emond, the remaining Defendants, all state officials being sued in their official capacities[17] for monetary relief,[18] are also not "persons" within the scope of Section 1983. *See Karteron v. Chiesa*, 2018 U.S. Dist. LEXIS 132190, at *5 (D.N.J. Aug. 7, 2018) (dismissing constitutional claims brought against two state agencies and a state employee in his official capacity because sovereign immunity applies). The Court can only glean that Plaintiff's claims against Former DAG Ferlicchi are brought against her in her official capacity as Former

---

[17] "Plaintiff further alleges that while Defendants . . . were acting within their capacity as DCF employees during the racially discriminatory acts, they acted outside their assigned duties as employees of DCF when they retaliated against her using practices that were racially discriminatory against this Plaintiff." SAC ¶ 5.

[18] "PRAYER FOR RELIEF[:] For lost wages and all other compensation denied or lost[;] For compensatory damages[;] For punitive damages[;] For liquidated damages . . . ." SAC at 55.

Deputy Attorney General of New Jersey, as Plaintiff's claims against her stem from her actions in defending the 2015 State Action, and Plaintiff seeks only monetary relief.[19]  *See Chapman v. New Jersey*, 2009 U.S. Dist. LEXIS 75720, at *6 (D.N.J. Aug. 25, 2009) (dismissing action against attorney general of New Jersey, sued in her official capacity, because, in effect, it would be an action against the state).  Similarly, with the exception of Emond, Plaintiff's claims brought against the remaining Defendants are brought against them acting in their official capacities as former and current DCF employees, and Plaintiff seeks only monetary relief.

Accordingly, Plaintiff's Section 1983 claims will be dismissed, as Plaintiff improperly brings this action against state officials acting in their official capacities, who are not amenable to suit under Section 1983.  This conclusion applies to all Defendants, except for Emond.[20] [21]

## C. Count 3 – Plaintiff's 42 U.S.C. § 1981 Claim Will Be Dismissed

Count 3, Plaintiff's Section 1981 claim, fails as it lacks the requisite contractual relationship between the parties.  This claim will be dismissed.

Section 1981 provides that all persons within the United States' jurisdiction shall have "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  "Any claim brought under [Section] 1981, therefore, must initially identify an impaired 'contractual relationship,' . . . under which the plaintiff has rights."  *Domino's Pizza, Inc. v.*

---

[19] Plaintiff submits only one additional allegation as to Former DAG Ferlicchi: "From 2016-2018 Defendant Ferlicchi . . . assign[ed] two uniformed and gun carrying police officers to accompany [Franklin and Altamarino] to conduct nine unwarranted, investigative-like inspections of the Plaintiff's center." SAC at 16-17.

[20] "All of the Defendants, except for Defendant Emond[] were state actors acting in the scope of their employment on behalf of Defendants DCF and OOL when they inflicted unlawful and discriminatory treatment upon the Plaintiff." SAC ¶ 99.

[21] As noted at the beginning of this section, it makes no difference that Plaintiff brings this action against Emond in her personal capacity because all claims against Emond are barred by *res judicata*.

*McDonald*, 546 U.S. 470, 476 (2006) (citing 42 U.S.C. § 1981(b)).  Section 1981 does not establish a private cause of action against state actors generally.  *Morisseau v. Borough of N. Arlington*, 2018 U.S. Dist. LEXIS 51701, at *37 (D.N.J. Mar. 28, 2018) (citing *McGovern v. City of Phila.*, 554 F.3d 114, 122 (3d Cir. 2009)).  Plaintiff does not allege the existence of a plausible contractual relationship with Defendants.  Her relationship vis-à-vis Defendants is purely that of someone whose business is regulated by the state.  Therefore, Plaintiff has not set forth a Section 1981 claim against Defendants.  Accordingly, Plaintiff's Section 1981 claim will be dismissed.

### D.  Count 4 – Plaintiff's Title VII Claim Will Be Dismissed

Count 4, Plaintiff's Title VII claim, fails as it is not brought against any proper defendants. This claim will be dismissed.

A viable Title VII requires an employer-employee relationship between a plaintiff and a defendant.  *See Shah v. Bank of Am.*, 346 F. App'x 831, 833 (3d Cir. 2009) (Title VII requires employer-employee relationship).  There is no employer-employee relationship between any named Defendant and Plaintiff.  Plaintiff protests that she was "like an employee" because of the requirements Defendants imposed on how she was to run her childcare center, but under the Child Care Center Licensing Act, N.J.S.A. 30:5B-1 *et seq.*, DCF has broad authority to impose restrictions on childcare centers, like Plaintiff's childcare center.  *See* N.J.S.A. 30:5B-5 ("The department shall have responsibility and authority to license and inspect child care centers . . . ."); *Camacho v. P.R. Ports Auth.*, 369 F.3d 570, 576 (1st Cir. 2004) (holding that stringent regulations over harbor pilots "fall short of evincing the degree of control and supervision traditionally considered sufficient to create an employer-employee relationship," particularly because the pilots "retain important badges of autonomy").  Thus, Plaintiff's discontent with these requirements does

not liken her relationship with Defendants to that of an employer-employee relationship. Accordingly, Plaintiff's Title VII claim will be dismissed.

### E. Leave to Amend Would Be Futile

Dismissal of Plaintiff's federal claims—Counts 1-4—will be with prejudice as amendment would be futile. "A proposed amendment to a complaint is futile if the complaint, as amended, would fail to state a claim upon which relief could be granted." *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 465 (3d Cir. 2021). Plaintiff has now had two opportunities to amend. *See* Compl., FAC, SAC. Thus, the Court declines to permit Plaintiff to further amend her federal claims. *See Latta v. Luckman*, 2022 U.S. Dist. LEXIS 210347, at *18-19 (D.N.J. Nov. 21, 2022) (dismissing federal claims with prejudice after the plaintiff failed to state federal claims upon which relief could be granted in first amended complaint); *Soto v. New Jersey*, 2020 U.S. Dist. LEXIS 87657, at *18 (D.N.J. May 19, 2020) (denying leave to amend federal claims where the plaintiff had previously amended complaint).

### F. Supplemental Jurisdiction Will Not Be Exercised

Counts 5-12 of Plaintiff's SAC assert state claims under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*, New Jersey Constitution, and New Jersey Conscientious Employee Act, N.J.S.A. 34:19-1 *et seq.*, as well as claims alleging a breach of the implied covenant of good faith and fair dealing, and the continuing violations doctrine.

Typically, a district court must have either federal question or diversity jurisdiction over an action. 28 U.S.C. §§ 1331, 1332; *see also Rockefeller v. Comcast Corp.*, 424 F. App'x 82, 83 (3d Cir. 2011). However, a district court may exercise supplemental jurisdiction over "claims that are so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §

1367(a); *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009). Where a district court "'has dismissed all claims over which it has original jurisdiction[,]'" *Kach*, 589 F.3d at 650 (quoting 28 U.S.C. § 1367(c)(3)), or when a plaintiff's "claim raises a novel or complex issue of State law[,]" 28 U.S.C. § 1367(c)(1), a district court may decline to exercise supplemental jurisdiction. *See Pittman v. Grewal*, 2022 U.S. Dist. LEXIS 28750, at * 40-41 (D.N.J. Feb. 17, 2022) (declining to exercise supplemental jurisdiction over state claims asserting violations of the New Jersey Constitution following dismissal of federal claims). "Such a decision is 'purely discretionary.'" *Id.* at *41 (quoting *Bush v. City of Phila.*, 765 F. App'x 843, 847 (3d Cir. 2019)). In exercising its discretion, a "district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc. v. Delaware Cnty., Pennsylvania*, 983 F.2d 1277, 1284 (3d Cir. 1993) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). Finally, "[w]here the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims." *Soto v. New Jersey*, 2020 U.S. Dist. LEXIS 87657, at *19-20 (D.N.J. May 19, 2020) (citing *United Mine Workers of Am.*, 383 U.S. at 726; *Growth Horizons, Inc.*, 983 F.2d at 1284-85); *see also United Mine Workers of Am.*, 383 U.S. at 726 (encouraging federal courts to avoid "[n]eedless decisions of state law"); *Markowitz v. Ne. Land Co.*, 906 F.2d 100, 106 (3d Cir. 1990) ("[T]he rule within this Circuit is that once all claims with an independent basis of federal jurisdiction have been dismissed the case no longer belongs in federal court.").

Here, Plaintiff's federal claims will be dismissed, leaving only Plaintiff's state claims. Notably, Plaintiff asserts claims under the New Jersey Constitution concerning issues that have not previously been decided by New Jersey courts. *See Pittman*, 2022 U.S. Dist. LEXIS 28750, at *41-42 (declining to exercise supplemental jurisdiction where New Jersey courts had not yet

squarely addressed the state constitutional issue raised by the plaintiff). Accordingly, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state claims. *See Latta*, 2022 U.S. Dist. LEXIS 210347, at *18 (declining to exercise supplemental jurisdiction over state claims, including NJLAD claim, after dismissing federal claims).

IV.   **CONCLUSION**

For the reasons set forth above, Defendants' motions to dismiss will be **GRANTED**. Plaintiff's federal claims—Counts 1-4—will be **DISMISSED** *with prejudice*. Plaintiff's state claims—Counts 5-12—will be **DISMISSED** *without prejudice*, and she may refile these claims in state court in accordance with 28 U.S.C. § 1367(d) and *Artis v. District of Columbia*, 583 U.S. 71 (2018). An appropriate Order accompanies this Opinion.

Dated: November 16, 2023

*Evelyn Padin*
Evelyn Padin, U.S.D.J.